{¶ 27} I respectfully dissent from the majority's disposition of the second assignment of error and from the judgment. Instead, I would sustain the second assignment of error and reverse and remand on that basis. I concur in the majority's disposition of the first assignment of error. In my view, the trial court incorrectly appraised whether the presumption of non-registration had sufficiently been rebutted, and failed to apply salient precedent relevant to the facts of appellee's crimes. I believe that these failures preclude review of the trial court's ultimate finding that appellee should not be subject to the registration requirements of R.C. 2950.04.
 {¶ 28} As we determined in the discussion of the first assignment of error, R.C. 2950.01(P)(1) required that the trial court begin with the rebuttable presumption that appellee should not be subject to sex-offender registration requirements. A rebuttable presumption in a civil proceeding[3] "* * * imposes on the party against whom it is directed the burden ofgoing forward with evidence to rebut or meet the presumption * * *." Evid.R. 301. (Emphasis added.) In other words, "* * * once a presumption is met with sufficient countervailing evidence, it falls and the presumption serves no furtherfunction." (Staff Notes to Evid.R. 301.) (Emphasis added.)
 {¶ 29} Thus, Evid.R. 301 requires a two-step analysis. In the first step, the court performs a gate-keeping function. In the second step, the court acts as the fact-finder. In
 {¶ 30} this case, the first step required the trial court to view only appellant's evidence to determine whether appellant had met its burden of going forward with some fact or facts relevant to the statutory factors that the court must consider (public safety, the interests of justice, and protection of the general public) that could rebut the presumption that registration is unnecessary (by showing a likelihood of recidivism). If there had been no evidence that could counter the presumption of non-registration, then the court would have beencompelled to rule as it did. On the other hand, if appellant met its burden, then the court was required to level the playing field and was forbidden to take the presumption into further account. Evid.R. 301.[4]
 {¶ 31} For the second step, the court was required to analyze all of the facts adduced by both parties, in light of the statutorily enumerated factors, and any additional factors that the court deemed relevant, and, in the exercise of its discretion, determine whether appellant had discharged itsburden of proof of demonstrating, by a preponderance of the evidence,[5] that appellee should be subject to the registration requirements of R.C. 2950.04.
 {¶ 32} In my estimation, the trial court in this case failed to perform its gate-keeping function first; rather, it allowed the presumption of non-registration to stand during its fact-finding inquiry, which, I believe, led to an artificial and unlawful elevation of the burden of proof placed upon appellant.
 {¶ 33} At the sex offender registration hearing the court stated, "[t]he defendant is presumptively not a sexual offender at this point. And there is no evidence that the defendantpresents a risk of reoffending or engaging in similar futureconduct. * * * there is also no evidence from the state thatthe defendant is likely to offend again in a similar manner or to engage in more serious, sexual offenses. * * * the state offered no showing that the public safety concerns would be met by requiring this defendant to register as a sexual offender." (Emphasis added.)
 {¶ 34} In my view, there was evidence of record tending to show that appellee is likely to reoffend and that he presents a danger to the public. Thus, appellant met its burden of rebutting the presumption of non-registration, and the court should have disregarded the presumption in proceeding to its fact-finding task.
 {¶ 35} For instance, appellee admitted that he is guilty of not one, but 13 counts of sexual imposition in connection with unlawful sexual contact with various women. Appellee's past behavior alone is evidence that would support an inference that he has a propensity to commit similar acts in the future.[6] Moreover, the facts submitted at the guilty plea hearing, as well as those set forth in the indictment and bill of particulars, reveal that appellee approached a total of 40 women, either individually or in groups, on about 30 occasions over a time period spanning roughly 21 months. Appellee victimized two of the women twice. On 13 occasions, appellee engaged in touching or "fondling"[7] the women, and on one occasion, appellee chased a woman to her apartment and reached inside the door.[8] On several occasions, appellee struck more than once on the same day, or over the same night. This evidence would support an inference that appellee has a compulsion to commit acts of public indecency and sexual imposition, and that he will likely have such a compulsion in the future.[9] Finally, appellee did not stop offending until his arrest on November 19, 2003. This, too, constitutes evidence that would support an inference that appellee poses a risk of reoffending.[10]
 {¶ 36} I acknowledge that the foregoing facts would notcompel a rational trier of fact to conclude that appellee is likely to reoffend. However, this court's sex offender jurisprudence makes it clear that the facts of record wouldsupport such a conclusion, and that is all that is required of appellant in discharging its burden of production so as to render the presumption of non-registration ineffectual going forward. When the trial court determined that it had no evidence before it that could rebut the presumption found in R.C. 2950.01(P)(1), this was reversible error.
 {¶ 37} In turn, that court erroneously failed to abandon the presumption and proceed to a determination whether, given all of the evidence and arguments of both parties, appellant had established, by a preponderance of the evidence, that appellee should be subject to the registration requirements for sexually oriented offenders. In other words, the court allowed the presumption in this case to erroneously heighten the burden of persuasion.
 {¶ 38} Had the trial court appropriately engaged in the required two-step analysis, its determination made in the second step could not be reversed absent an abuse of discretion. However, because the court erroneously failed to acknowledge the existence of certain relevant evidence, and, as a result, allowed the presumption to remain operable in its evaluation of both parties' evidence, I would reverse and remand.
[3] Though neither this court nor the Supreme Court of Ohio has yet spoken on the issue, I conclude, upon review of the statute, that a hearing conducted pursuant to R.C. 2950.021 is a civil proceeding. See State v. Newton (June 11, 1998), 10th Dist. No. 97APA10-1353 (holding that hearings held pursuant to R.C.2950.09 — the sexual predator statute — are civil proceedings.)
[4] This view of the manner in which presumptions are to be applied is known as the "Thayer view" or the "bursting bubble" theory, which contrasts with the "Morgan view." See, generally, 2 McCormick, Evidence (4th Ed.Strong Ed. 1992) 462-476, Section 344. The language of Evid.R. 301 "does not resolve the difficult issues as to sufficiency of evidence necessary to rebut a presumption[.] * * * These are left to case law analysis * * *." (Staff Notes to Evid.R. 301.) These "difficult issues" give rise to disagreements such as the one exemplified by the divergence of the majority's viewpoint and that expressed by this dissenter.
[5] Because the General Assembly could have specified a burden of proof in R.C. 2950.021, but chose not to do so, it is clear that the legislature intended to apply the usual preponderance of the evidence standard to R.C. 2950.021 determinations. SeeWalden v. State (1989), 47 Ohio St.3d 47, 53, 547 N.E.2d 962.
[6] In the context of sexual predator determinations, this court has held that past behavior is often an important indicator of future propensity. See, e.g., State v. Belton (Apr. 16, 2002), 10th Dist. No. 01AP-980; State v. Pennington (Jan. 29, 2002), 10th Dist. No. 01AP-657.
[7] Sept. 13, 2004, Tr., 11.
[8] Ibid.
[9] This court has held that the commission of multiple sex offenses over a period of time can show that the defendant has a compulsion and that he will likely have a compulsion in the future. See, e.g., State v. Ivery (May 23, 2000), 10th
Dist. No. 99AP-628; State v. Leonard (June 21, 2001), 10th
Dist. No. 00AP-1229; State v. Messer, 10th Dist. No. 03AP-169, 2004-Ohio-2127.
[10] The fact that an offender does not stop offending until he or she is caught has been deemed relevant to the risk of recidivism among sexually oriented offenders. See, e.g., Statev. Hardie (2001), 141 Ohio App. 3d 1, 6, 749 N.E.2d 792; Statev. Davis (May 18, 1999), 5th Dist. No. 98CA-A-05-025.